# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**ELICIA M. WIGGINS**                                                                                       **PLAINTIFF**

**VERSUS**                                                **CIVIL ACTION NO. 1:16cv172-RHW**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security**                                             **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Through counsel,[1] Plaintiff Elicia M. Wiggins filed this action May 5, 2016, seeking judicial review pursuant to 42 U.S.C. § 405(g) of the denial of Wiggins' application for supplemental security income under 42 U.S.C. § 1382c(a)(3). Wiggins contends the ALJ's finding of her residual functional capacity "was the product of error and was unsupported by substantial evidence." [13, p. 3] The parties consented to exercise of jurisdiction by the United States Magistrate Judge under 28 U.S.C. § 636(c) and FED.R.CIV.P. 73 and the case was reassigned to the undersigned for all further proceedings. [11], [12]

### Facts and Procedural History

On October 14, 2013, Wiggins filed application for supplemental security income benefits, alleging disability since January 1, 2002 when she was 25 years old,[2] due to ADHD, herniated discs, bulging discs, nerve inflammation, PTSD, anxiety and depression. [10, pp. 69-70, 131-134] Following denial of her application in November 2013, Wiggins requested a hearing. [10, pp. 72-83, 86-91, 93] On December 4, 2014, Administrative Law Judge (ALJ) David K. Fromme conducted the hearing in Springfield, MO, with Wiggins and Vocational Expert (VE) Terri Crawford testifying. [10, pp. 37-68]

---

[1]Wiggins hired counsel September 26, 2013 and has been represented by counsel since then. [10, p. 13]

[2]Wiggins was born in October 1976. [10, pp. 42, 131-134] At the hearing she amended her date of onset of disability to October 14, 2013, just before she turned 37. [10, pp. 42, 183]

Wiggins testified she lives in a trailer with her boyfriend and her 15-year-old son in Pierce City, MO. Both she and her boyfriend are unemployed, neither has any income, and her boyfriend is also trying to get Social Security.[3] Wiggins has a 10th grade education and a valid driver's license. She testified she last worked in 2007 doing cleaning for Lacoba Homes,[4] but they wanted her to work eight hours then go to school to be a nurse or nurse assistant for four hours, which she declined because there would be no one to get her child on and off the bus. [10, pp. 41-43, 57, 183] Wiggins testified she has been unable to work since 2008 due to constant sharp, shooting pain in her lower back down into both legs. [10, p. 44]

According to Wiggins, she can sit no longer than 30 minutes at a time, and can stand or walk only 10-15 minutes before having to stop due to low back pain. She takes hydrocodone, mobic, baclofen and gabapentin for back pain, and topiramate for migraine headaches. She does not sleep well because of her back and her "brain won't shut down." She has difficulty bending over; after vacuuming for six to seven minutes, she has to rest 15-20 minutes. She has problems standing 15-20 minutes to wash dishes, and difficulty cleaning the bathroom and doing laundry (taking clothes from the dryer and standing to fold them), but she prepares meals daily and does laundry weekly. The heaviest thing she lifts at home is her 15-pound dog, but she stated she could not do that repeatedly during an eight-hour day. She stated she could not sit for two hours. She drives perhaps once a week, and stated she can usually ride in a car about ten minutes before experiencing back pain. [10, pp. 45-50, 52, 54, 57]

---

[3] Wiggins indicated she was married, but separated from her husband for some 19 years. She gets $508 per month child support (sometimes irregularly paid), and $247 a month in food stamps. [10, p. 132]

[4] Work records show she worked for Lacoba in 2008. She told Dr. Brown she worked in a rehab facility in 2008, but quit because she felt her job duties did not match the job description for which she had applied. [10, pp. 145, 516]

Wiggins testified she has daily anxiety attacks and is uncomfortable going anywhere by herself except to the pharmacy for prescription drugs and frequent trips to the library. She stated she has panic attacks if there are too many people around when she goes out. She can use a computer, and does so at the library to check her son's Facebook page. She enjoys reading,[5] and if she is "lounging in the bed" at home, she can read for an hour before she has to get up; she cannot read that long sitting up. She is easily frustrated or irritated over such things as someone leaving a cabinet door open, or closing the bathroom door when no one is in there. She does not deal well with stress and finds everything stressful.

Wiggins testified present treatment for her back is pain medication, and her doctor is talking about physical therapy, but for now she has only stretches and such to do. Pain medications help, but injections in her back made things worse. [10, pp. 53, 59] Wiggins takes topiramate and Imitrex for migraine headaches which last three or four hours if she has Imitrex to take. She stated she is prescribed only nine Imitrex a month and she has more than nine migraines a month. If she does not have Imitrex, she goes to the emergency room to get a shot for a migraine after seven or eight hours. She does not feel she could work an eight-hour day when she had a migraine even if she had her medication. [10, p. 60] Wiggins goes to Clark Community Mental Health Center for her mental conditions, where she sees Dr. Christy, M.D., and Michelle Whitmire, Psy.D. for "talk therapy" because her "default mode is anger." She sees Dr. Whitmire every two weeks, or every week if needed. [10, pp. 51-57]

In October 2013, Wiggins described her daily activities as getting up, feeding the dogs and taking them out, doing the dishes, doing laundry, sweeping and mopping if needed, dusting, taking the dogs out again, cooking supper, watching television and going to bed. She prepares

---

[5]Wiggins stated she reads as often as she can and reads very well as long as she takes her ritalin; she finds it hard to focus or concentrate without the medication. [10, p. 171]

meals and cleans every day, dusts once a week and does laundry often. She cares for her son and takes him to and from activities such as football games. She takes care of her own personal needs, bathes and dresses herself, sitting on the edge of the tub to shave. She can go out alone, shops for food, clothes and groceries, and tries to walk daily. Wiggins stated she can walk four or five blocks, then must rest about ten minutes. [10, p. 172] She can handle money, pay bills, count change, use a checkbook and handle a savings account. [10, pp. 167-70, 172]

Vocational Expert Terri Crawford testified an individual could not sustain any competitive work if she had marked or extreme limitations in ability to understand, remember and carry out instructions; maintain attention, concentration and persistence for extended periods; maintain regular and punctual attendance; sustain an ordinary routine without special supervision; or is markedly limited in ability to interact with the public, to accept instructions and respond appropriately to criticism from supervisors, to respond appropriately to changes in the work setting or get along with co-workers without distraction. [10, pp. 61-62] There would also be no work available for one with impairments which would make her be off-task 20% of an eight-hour day, or who would miss work twice a month. [10, pp. 64-65] However, assuming one of Wiggins' age, education and work history, who is able to stand or walk two hours a day, sit six hours a day, lift ten pounds occasionally and less than ten pounds frequently; who can occasionally bend, stoop, crouch, squat, kneel, and crawl, but cannot climb ladders; who cannot work at heights or around hazardous moving equipment, or in extreme temperatures, humidity, dust, fumes, noise or vibration, nor work at high stress, fast-paced activity; who cannot handle frequent changes in the work setting, cannot work in contact with the public or have close interaction with coworkers; and who has difficulty sustaining a high level of concentration or sustained attention to detail, but can sustain simple, routine repetitive tasks, VE Crawford testified that such a person could perform unskilled work such as an addresser or final assembler,

both of which are SVP (specific vocational preparation) level 2,[6] and are performed at the sedentary exertional level. [10, pp. 61-64]; *U.S. Dep't of Labor, Dictionary of Occupational Titles* (4th ed. 1991) 713.687-18.

On March 24, 2015, ALJ Fromme issued a twelve-page decision finding Wiggins not disabled under the Social Security Act. [10, pp. 21-32] The Appeals Council denied review of that decision on March 22, 2016 [10, pp. 5-7], and Wiggins filed the present action in this Court.

Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision. *Villa*, 895 F.2d at 1022. Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court. It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417; *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (a finding of "no substantial evidence" is appropriate only if no credible evidentiary

---

[6]SVP level refers to the amount of time required for a typical worker to learn how to do the job. SVP 2 is unskilled work, or work requiring "little or no judgment to do simple duties that can be learned on the job in a short period of time." See 20 C.F.R. §§ 404.1568(a), 416.968(a); SSR 00-4p, 2000 WL 1898704.

choices or medical findings support the decision). Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the administrative decision (*Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)); the decision of the Commissioner is accorded great deference and "will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## Analysis

The Social Security Act defines disability as inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C.A. § 1382c(a)(3)(A). As the one claiming disability, Wiggins had the burden to prove disability which precludes her from engaging in substantial gainful work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) ("suffering of some impairment does not establish disability; a claimant is disabled only if [she] is 'incapable of engaging in *any* substantial gainful activity'").

ALJ Fromme applied the correct law for determining disability – following the five-step sequential evaluation process set out at 20 C.F.R. § 416.920(a)(4)(i-v). The burden of proof rests on the party claiming disability through the first four steps of the evaluation process. *Leggett*, 67 F.3d at 564; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Step one requires determination of whether the claimant is engaging in substantial gainful activity, *i.e.*, work that involves significant physical or mental activities and is usually done for pay or profit. The ALJ found Wiggins had not engaged in substantial gainful activity since October 14, 2013.

At step two the ALJ determines whether the claimant has a medically determinable impairment or combination of impairments which meets the duration requirement and is severe, *i.e.*, which significantly limits ability to perform basic work activities. ALJ Fromme found Wiggins has severe impairments of degenerative disc disease of the lumbar spine, headaches, chronic pain syndrome, generalized anxiety disorder, post-traumatic stress disorder (PTSD), panic disorder, attention deficit hyperactivity disorder (ADHD) and depression. [10, p. 23]

Step three requires determination of whether the claimant's impairment or combination of impairments is of such severity that it meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Unless the impairment or combination of impairments is of such severity and meets the duration requirement, the analysis continues to step four. With respect to Wiggins' back complaints, Judge Fromme found:

> The medical evidence did not establish the degree of nerve root compression or associated signs of neurological-anatomic distribution of pain, limitation of motion, motor loss, muscle atrophy, reflex or sensory loss, or spinal stenosis or arachnoiditis needed to meet or medically equal in severity the requirements for a disabling disorder of the spine as defined in Section 1.04 of Appendix 1.

He further found the severity of Wiggins' mental impairments neither singly nor in combination meet or medically equal the criteria of listings 12.04 (affective disorders), 12.06 (anxiety-related disorders) and 12.09 (substance addiction disorders), due to lack of evidence of any marked

limitations or restrictions – Wiggins has mild restriction in daily living activities [10, pp. 167-172, 55-57], moderate difficulties in social functioning [10, pp. 167-174, 270-287, 356-379], moderate difficulties with respect to concentration, persistence or pace [10, pp. 167-171], and no episodes of decompensation of extended duration, nor any residual mental disease process which might render her unable to function.

At the fourth step of the evaluation, the ALJ must determine (1) the claimant's residual functional capacity (RFC), *i.e.*, her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments, and (2) whether she has the residual functional capacity to perform the requirements of her past relevant work. In this case the ALJ was required to determine only the former, since he found Wiggins had no past relevant work. Upon consideration of all Wiggins' symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as opinion evidence, ALJ Fromme found Wiggins had the residual functional capacity (RFC) to perform sedentary work.[7] Due to her back problems, the ALJ limited Wiggins to lifting/carrying ten pounds occasionally and less than that frequently, sitting six hours a day, standing/walking up to two hours in an eight-hour day; occasionally bending, kneeling, crouching, crawling, stooping and squatting; and never climbing ladders. Because of her medications, he found she should not work around heights or hazardous unprotected moving equipment. Because of her headaches, he precluded exposure to extreme temperature, humidity, dust, fumes, poor ventilation, noise or vibration. Because she does not do well with stress, the ALJ held she could not do work in a high stress setting or involving fast paced activity, strict quotas, deadlines or

---

[7]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools, and involves sitting and certain amount of walking and standing in carrying out job duties. 20 C.F.R. § 416.967(a)

schedules, or frequent or unusual changes in the work setting. Because being around people increases her anxiety, he found Wiggins should not have contact with the public or close, personal interaction with co-workers, and because she sometimes loses focus she should be limited to simple repetitive tasks.

Wiggins complains the ALJ's finding as to her RFC is unsupported by substantial evidence, that the ALJ relied upon his own opinion rather than medical source statements, and that he failed to properly consider Dr. Whitmire's opinion evidence. "A person's 'residual functional capacity' is determined by combining a medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988) (citing *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983)). From its full review of the entire record, the Court finds ALJ Fromme carefully considered all the evidence in arriving at Wiggins' RFC, and substantial record evidence supports his finding that Wiggins is capable of performing sedentary work. Judge Fromme's decision includes copious citations to record evidence including Wiggins' statements about her conditions, which he did not find entirely credible due to their inconsistency with objective medical or other evidence of record; the lack of objective findings regarding her alleged mental impairments; the conservative treatment she has received - including physical therapy and home exercises [10, pp. 308-312, 242-45], and medications which help [10, pp. 225-32, 238-41, 254-59, 58-61, 361, 365]; and her refusal to consider surgery for claimed constant back pain for years. [10, p. 331] "If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d at 348.

The record also shows that although Wiggins complained of constant back pain, she was often noted to have normal gait and station, adequate muscle strength and tone, and she denied

any weakness. [10, pp. 228-30, 275-76, 308-12, 231-232, 225-27] In November 2013, Wiggins was found to have normal gait and station, adequate muscle strength, normal range of motion in her neck and extremities, and a negative straight leg test bilaterally. [10, p. 311] The Court also notes that despite Wiggins' statements regarding frequent migraine headaches requiring emergency room treatment,[8] her medical records alternate between claims of headaches [10, pp. 231-2, 457-68, 496], denial of headaches [10, pp. 238-41, 254-59, 235-37], and no mention of headaches [10, pp. 242-45, 246-50]. ALJ Fromme examined the inconsistency between Wiggins' claimed mental symptoms and her medical records,[9] the fact that she has had no inpatient hospitalizations and none have been recommended, and she has neither been hospitalized nor prescribed stronger pain medications for her back, headaches, ADHD, or depression/anxiety. [10, p. 27-28] Contrary to Wiggins' contention, the record is not incomplete absent a medical source statement; the Court's function is still to determine whether substantial record evidence supports the administrative decision. *Lewis v. Colvin*, 2015 WL 5224387 (S.D. Miss. Sept. 8, 2015).

The ALJ also considered Wiggins' daily living activities and found the level of activity she reported inconsistent with the limitations she claims. The record supports this finding as well. In short, the Court finds the ALJ's findings on residual functional capacity were properly based on the totality of the evidence, and are amply supported by the record. See *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). Wiggins has not shown her limitations exceed those

---

[8]It appears from the record that Wiggins went to the emergency room for many complaints, even sore throats, colds and toothaches. [10, pp. 436, 447, 450, 453]

[9]For example, Wiggins reported "trouble concentrating and focusing, but her thought processes were noted to be well organized, logical and coherent with no lost association or flight of ideas." [10, pp. 27, 271, 273, 275]

of the RFC. This Court is not required to reverse the ALJ based on mere speculation that had the ALJ secured additional evidence it might have changed the result of the hearing.

Wiggins argues Judge Fromme failed to properly assess the opinion of her treating psychologist Dr. Whitmire. Wiggins saw Dr. Whitmire for talk therapy because "my default mode is anger and she's trying to help me with that." [10, pp. 53-4] The records show Wiggins saw Whitmire in November 2012 and eight times in 2013 with complaints of anxiety because of various problems, *e.g.*, her teenage son told her he was gay, her boyfriend did not treat her well, and she had been arrested for taking a coin collection belonging to her best friend Anna's husband. Wiggins reported she had panic attacks, sleeping problems, crying spells, and a lost time episode. [10, pp. 277-279, 281-83, 285-87] In October 2013, Dr. Whitmire completed a mental capacity assessment checklist indicating Wiggins had: extreme[10] limitations in ability to perform activities within a schedule or maintain regular attendance, or to perform at a consistent pace or make simple work-related decisions; marked limitations in ability to understand, remember and carry out detailed instructions, to maintain concentration/attention for extended periods, sustain an ordinary routine without special supervision, work in coordination with others, work a normal workday or week, interact appropriately with the public, accept instructions, respond appropriately to criticism, get along with peers and respond appropriately to changes in the work setting; and moderate limitations in ability to remember locations, work procedures and to remember/carry out short simple instructions, or to ask simple questions or request assistance and maintain socially appropriate behavior. [10, pp. 305-07] Although the checklist sought a description of medical/clinical findings that support the assessments, Dr. Whitmire provided none. [10, pp. 305-307] Wiggins continued to see Whitmire in November

---

[10]The checklist uses the term "extreme" to indicate "a major limitation ..., no useful ability to function in this area." [10, p. 305]

2013 and several times in 2014, discussing continued problems with her boyfriend and other family members, her son's suspension from school for threatening violence against other students, and concerns about her upcoming social security hearing, a recent shoplifting charge and court date, and the end of her friendship with Anna. [10, pp. 356-78, 476-482]

At the conclusion of the December 2014 hearing, ALJ Fromme expressed his concern that Dr. Whitmire had submitted a medical source statement, but "has never reported a mental status exam with any positive findings or have not done any objective or detached assessment of functioning and I don't see any that would explain the assessment." The Judge stated he was going to have an examination by a clinical psychologist scheduled to do that. [10, p. 67]

Dr. Whitmire's opinion consists of a check-the-box questionnaire, which the ALJ found unsupported by Whitmire's own treatment notes, or examinations of other physicians, and inconsistent with Wiggins' reported daily activities. [10, pp. 24-28] Judge Fromme gave "little weight" to Whitmire's opinion because the opinion was

> ...unexplained by reference to positive clinical findings. No structure mental status exams are reported and there are no recorded positive clinical findings in the treatment notes prior to the date of the medical source statement.

[10, p. 28] An ALJ is justified in giving little weight to a treating physician's opinion which is brief and conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by, or inconsistent with, the record as a whole. *Perez*, 415 F.3d at 465-66; see also *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding questionnaire format typifies brief or conclusory testimony to which little weight may be given).

On January 12, 2015, Dustin Brown, Psy.D., conducted an examination of Wiggins to provide a psychological disability evaluation. [10, pp. 514-520] During the exam, Wiggins conceded she had never had a formal psychological evaluation. She spoke of her anxiety and

interpersonal irritation which lead her to believe she cannot interact with others well enough to maintain employment, stated her mother saw her as competition, and relayed that when she got pregnant in high school her mother gave her an abortion for her seventeenth birthday and forced her to get married. Wiggins separated from her husband within a year but has never divorced. Subsequent relationships resulted in a daughter by one man, a son by another, and an abusive relationship with another where both parties assaulted each other. She and her son now live with her present boyfriend. Wiggins reported she was expelled from school in tenth grade after skipping classes, running away from home, and delinquent, stupid behavior. She claimed she had a 4.0 GPA, then stated achievement testing in high school showed her to be at a third grade level, but she denied ever being in special education classes, instead stating she was in classes for gifted and talented children for six years.

    Wiggins stated she had been unemployed for eight years since the motel where she worked closed, then stated she worked in a rehab facility in 2008 but quit because she did not feel her job duties matched her job description. She then stated she worked a short time at another local hotel but was fired because the manager did not like her boyfriend, and that she had worked in restaurants, bars and casinos in Louisiana and bars in Missouri for months to years at a time. Wiggins denied actively seeking employment, telling the examiner she receives food stamps, Medicaid, and financial assistance from her boyfriend's mother, and she identified her future plan for financial security is "to get disability." Wiggins said she wants to work but just cannot take people or follow directions.[11] She indicated she must be accompanied when she leaves home, but she drove herself alone to the evaluation appointment and maintains a valid

---

[11]Before the evaluation began, the examiner saw Wiggins in the reception area interacting with other clients, discussing in detail her psychological history, her difficulty with the Social Security judge, and reasons for her current assessment; and commenting on children playing in the area. She indicated she was going to Wal-Mart after the evaluation. [10, p. 519]

drivers license. She stated she can schedule her own appointments but keeping them is hard because people will not help her and she has no money.

Wiggins discussed some legal problems including a 2013 arrest for theft of rare coins for which she was fined, a subsequent arrest for failing to pay the fine, and a prior charge of grand theft auto which was a "misunderstanding" and charges were dropped. She hates police, thinks they are all ignorant, and says she has had no good experiences with them. She adamantly denied any other legal history, and when asked about her previous statements about stupid behaviors leading to her expulsion from school, she responded, "I don't know." Wiggins has been a smoker since age 13, and used alcohol in her twenties often to the point of intoxication and blackout, but stated she has had only four or five drinks in the last 14 years, and denied use of illicit drugs or abuse of prescription medications.

Wiggins admitted she had no history of inpatient psychological treatment, noting her therapy sessions at the Clark Center, which she stated she ultimately discontinued because her boyfriend objected to the cost of gas for the visits. She reported a long history of difficulty in managing anger and interpersonal irritation; she gets angry when providers describe her as having "mood swings" – she claims, "It's bipolar. Not mood swings." She stated she gets overwhelmed for days at a time when anxious, takes hours to calm herself, but has never sought medical attention while experiencing anxiety. She denies anything consistent with any manic episode, hallucinations or delusions, and is vague in trying to describe her PTSD symptoms, noting only that she has "vivid, hurtful dreams." Wiggins came to her appointment alone, was properly oriented to person, place, time and situation, appropriately dressed and demonstrating adequate hygiene. She explained her slightly slurred speech by stating she took her anxiety medication before she came, but she denied being impaired by the medicine. The examiner

observed no motor impairments and no obvious thought disturbances or breaks from reality, and her mood/affect alternated between joking and crying. She reported no hallucinations/delusions.

Dr. Brown estimated Wiggins' intellectual functioning in the low average range based on her academic history and vocabulary used in the interview. He noted she had limited insight into her emotions/behaviors and how they influence those around her, that her reasoning is sometimes convoluted and she tended to avoid responsibility when recounting her actions. She tended to give up easily in the Mini Mental Status Exam and required encouragement from the evaluator to respond, but she refused to even try to do some of the tests. Dr. Brown found she had an extensive history of emotional dysregulation, chaotic relationships, a diffused sense of identity, interpersonal issues, difficulty managing anger, and feelings of rejection and abandonment most consistent with borderline personality disorder. Dr. Brown reported that Wiggins blames others for her poor decisions and lack of fortune, takes minimal responsibility for own actions, and has a possible tendency to manipulate situations. Dr. Brown concluded Wiggins is not bipolar due to absence of any mania symptoms, but diagnosed borderline personality disorder and other specified anxiety disorder.

Dr. Brown opined that despite Wiggins' claims of memory problems, none were observed during the assessment and Wiggins remained able to understand moderately complex tasks; she was able to sustain concentration and persistence with moderately complex tasks. Based on her ability to appropriately interact with the evaluator, he estimated she was able to have moderate contact/interaction with the public and co-workers, and high contact with work supervisors. Dr. Brown found Wiggins presently capable of adapting to a moderately demanding environment, and managing her own funds. He found her claimed symptoms inconsistent with the examiner's observations, inconsistently reported and self-contradicted in

multiple instances during the interview.  Dr. Brown found Wiggins had no limitations on ability to understand, remember and carry out instructions; mild limitations on ability to interact with the public and co-workers and respond to usual work situations and changes in a routine work setting.  The ALJ gave Dr. Brown's opinion some weight.

Judge Fromme did not totally agree with either Dr. Whitmire or Dr. Brown.  For instance he agreed with Dr. Whitmire as to the fact, if not the degree, that Wiggins' mental impairments limited her ability to interact with the public and coworkers, and to maintain attention and concentration for extended periods, and he disagreed with Dr. Brown's finding that Wiggins was able to engage in detailed tasks.  Instead the ALJ restricted Wiggins to simple routine work with no interaction with the public, limited interaction with co-workers and simple work without strict quotas.  The resolution of such conflicts in the evidence is within the ALJ's discretion.  *Jones v. Heckler*, 702 F.2d 616, 521 (5th Cir. 1983).  The Court finds substantial record evidence supports the ALJ's finding as to Wiggins' RFC.

The Court finds the Commission satisfied its burden at Step Five, with the Vocational Expert's testimony which incorporated the limitations of the RFC, and identified available jobs within Wiggins' limitations.  See *Perez v. Heckler*, 777 F.2d 298, 300-301 (5th Cir. 1985).  The burden then shifted back to Wiggins to show she could not perform those jobs.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  Wiggins failed to carry her burden.

Based upon the record in its entirety, the Court finds the Commissioner's decision is supported by substantial record evidence, was reached in accordance with relevant legal standards and should be affirmed.  A separate judgment will be entered.

**SO ORDERED**, this the 5th day of September, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE